UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

REPORT AND RECOMMENDATION

* * * * * * * * * * * * * * * * * * *

John Russell Penn,

Plaintiff,

vs.

Warden Constance Reese, Unit Manager Dave Duncan, Dr. Trung Tran, Captain Jorge Castenada, Counselor Mike Stalka, Counselor Guy Howell, and Associate Warden David Goode,

Defendants. Civ. No. 01-708 (JEL/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 28th day of June, 2002.

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Defendants' Motion to Dismiss, and for Summary Judgment. The Plaintiff appears pro se, in forma pauperis, and the Defendants appear by Lonnie F. Bryan, Assistant United States Attorney. For reasons which follow, we recommend that the Defendants' Motion to

FILED________
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

Dismiss or for Summary Judgment be granted, and that the Plaintiff's First Amended Complaint be dismissed, but without prejudice.

II. Factual and Procedural History

The Plaintiff was confined at the Federal Medical Center in Rochester, Minnesota ("FMC-Rochester"), as a pretrial detainee, from November 17, 2000, through mid-2001. See, First Amended Complaint, at 3 [Docket No. 32]. Upon arrival at FMC-Rochester, he was housed in the Medical/Surgical Unit ("M/S Unit"), in order to receive treatment for his left heel, which he had fractured in a fall. First Amended Complaint, at 3. Prior to arriving at FMC-Rochester, the Plaintiff had undergone surgery on his heel, and five screws had been inserted into the heel bone. Id. The Plaintiff alleges that, when he arrived at FMC-Rochester, his fracture had healed, and there was no infection in the wound. Id. at 3a. He was prescribed physical therapy, and was given a cane to assist his walking. Id.

The Plaintiff contends that, in early December of 2000, he was moved from a five-man dormitory cell to a two-man cell, along with another inmate. Id. at 3a. Two days later, the Defendant David Duncan ("Duncan") advised the Plaintiff that he, and his roommate, were to strip and wax the floor of their room, because its appearance was unacceptable. Id. The Plaintiff claims that he had to move heavy furniture in the room, in order to strip the floor, but

that, when he asked for some wax from Duncan, Duncan told him that his attempt to strip the floor was not acceptable. Id. Duncan allegedly advised the Defendant that he would send an orderly to strip and wax the floor later in the week. Id. The orderly did not arrive to complete the work, however, and Duncan reapproached the Plaintiff, about the floor, the following week. Id. The Plaintiff reminded Duncan about the fact that the orderly was supposed to come, strip, and wax the floor, and the next day, the Plaintiff allegedly received a note from the "head orderly" stating that he would strip and wax the floor the following Saturday. Id. at 3b. The work did not get completed, however.

The Plaintiff contends that, in early January of 2001, he experienced problems with his left foot, including swelling and soreness. Id. He was then placed on temporary, non-working status, which is called "idle status." Id. During the middle part of January of 2001, Duncan again approached the Plaintiff about buffing the floor. According to the Plaintiff, he reminded Duncan "of what he had said and [Duncan] wrote something in his notebook and walked off." Id. The Plaintiff asserts that he later tried to advise Duncan about the problems he was having with his foot, as well as his "idle status," but that Duncan told him that he still had to buff the floor, or he would be moved back to the five-man dormitory cell. Id.

The Plaintiff explains that he attempted to buff his floor, which required over three hours of mopping and buffing. Id. The Plaintiff alleges that, later that evening, he noticed that his left foot was draining a fluid, and he reported for sick call the following day. Id. at 3c. Apparently, the Plaintiff developed an infection, which subsequently required him to be transported to the emergency room at St. Mary's hospital. Affidavit of John R. Penn, attached to First Amended Complaint, at 3. He underwent bone surgery for the infection, and he has since had two more surgeries. Id.

"Approximately two weeks after the first incident" -- although "the first incident" is not further defined -- Duncan allegedly inspected the Plaintiff's room, and again ordered it to be buffed. First Amended Complaint, at 3c. The Plaintiff tried to buff the floor and, in doing so, expended about one and one-half hours on the project. Id. According to the Plaintiff, "Duncan completely disregarded plaintiff's obvious disability and physical inability to do the tasks ordered[.]" Id. at 3c-3d. Duncan apparently returned the next day, and told the Plaintiff that the floor had not been polished to his satisfaction. Id. at 3d. The following day, Defendant Michael Stalka ("Stalka"), a unit counselor, advised the Plaintiff, and his cell mate, that they were being moved backed

to a five-man dormitory cell "as punishment for not cleaning and polishing the floor[.]" Id.

The Plaintiff claims that the action of Duncan, and Stalka, caused him to be punished, by his move to a inferior five-man dormitory cell, without due process of law, and that Duncan violated his rights under the Eighth Amendment because he exercised a deliberate indifference to the Plaintiff's serious medical needs. Id. at 3d-3e; 3h. Specifically, in regard to his Eighth Amendment claim, the Plaintiff states as follows:

> The actions of defendant Duncan in compelling plaintiff to work while obviously disabled, to work beyond his physical abilities and strength, and to work when to do so would further damage his health constitutes a violation of the [Eighth] Amendment to the United States Constitution * * *.

Id. at 3h.

He further claims that the actions of Duncan, Stalka, and the remaining Defendants, violated numerous Bureau of Prison ("BOP") regulations. Id. at 3e; 3h.

The Plaintiff goes on to allege that, "immediately after being demoted from his two man room to the dorm without any due process," he saw Defendant Trung Tran, M.D. Id. The Plaintiff complained to Dr. Tran about the actions of Duncan and Stalka, which, he alleges, amounted to "completely ignor[ing] plaintiff's medical infirmities and * * * further violat[ing] the conditions of plaintiff's Idle

Status." Id. Dr. Tran "refused to become involved or to intervene" on the Plaintiff's behalf, "even though said actions by defendant Duncan had placed plaintiff in danger for his health and safety, as was proven later by plaintiff being forced to the emergency room at St. Mary's Hospital[.]" Id. at 3.f. According to the Plaintiff, Dr. Tran "violated BOP policy by failing to report defendant Duncan's wrongful actions." Id. at 3f. Defendant Guy Howell, who is a unit counselor, was allegedly notified of the Plaintiff's circumstances, and of Duncan's action, but refused to do anything to protect the Plaintiff. Id. at 3f. Allegedly, he further lied to the Defendant Jorge Castenada ("Castenada") about the fact that he had directed the Plaintiff to see Associate Warden Winn ("Winn"). Id.

Castaneda assertedly harassed the Plaintiff, verbally, and also physically prevented him from seeing Winn, at which time the Plaintiff was going to complain about his housing change. Id. at 3g. He further "falsely stat[ed]" that the Plaintiff and his witnesses "were congregating for the purpose of inciting a riot" and "threatened that all of them would be locked up immediately unless they dispersed." Id.

Defendant Constance Reese, the Warden at FMC-Rochester, is alleged to have known about the actions of the Defendants, but failed to take corrective action, including a failure to address

the Plaintiff's concerns through the administrative appeal process. The same allegation is lodged against Defendant David Goode, who is the Associate Warden at FMC-Rochester. Id.

On February 11, 2001, the Plaintiff filed a Request for Administrative Remedy, in which he stated:

> On February 9, 2001, Unit Manager Duncan ordered me and my cell-mate out of our two-man cell to a dormitory. The reason given was that our floor was "not properly buffed." This was after he ordered us not to touch our floor and that he would send his orderly to take care of it. The orderly wrote us a note that he was going to do it (see Attachment), but never did. We reminded Mr. Duncan of this on several occasions, but never saw his orderly.
>
> Now I have been moved out of my cell (an act of punishment) without benefit of a hearing and in the process have been called a "liar", a "filthy pig" and was threatened if I tried to file anything against him or any others that were involved. Since I was ordered here by a Federal judge for treatment for my broken heel and cannot move heavy cell furniture or buff floors (nurses and P.A. ordered me to stay off my feet) I feel Mr. Duncan has discriminated against me for my handicapped condition and has refused to discuss it by saying "I don't want to talk about it! There's no excuse!" and has placed me in a situation detrimental to me, my injury, and my mental and emotional health. All of this just prior to a possible surgery is uncalled for. My request is to be moved back into my cell and stop being harassed for my limitations.

Request for Administrative Remedy attached to First Amended Complaint.

On March 1, 2001, Reese responded, through Goode, as follows:

> This response concerns your Request for Administrative Remedy which we received on February 14, 2001. You state that you and your cellmate were ordered out of your two man cell to a dormitory. You state you have been moved out of your cell without benefit of a hearing. You also state you have been discriminated against because of your handicapped condition.
>
> Medical/Surgical Unit Rules and Regulations, which are currently posted in your unit, state:
>
> "At FMC Rochester, there exists a wide variety in unit designs and purpose. Therefore, each unit will address the issue of room assignments and changes in relation to the operations of that specific unit."
>
> Because you state you are unable to maintain room sanitation, in particular the floor, you have been moved into a dormitory area. In this area you do not have that particular sanitation responsibility. We also find no evidence of discrimination or harassment.

Response to Request for Administrative Remedy No. 232947-F1, attached to First Amended Complaint.

The Plaintiff alleges that he did not receive this response until March 23, 2001, and did then appeal his grievance further on March 27, 2001. Letter Dated May 5, 2001, addressed to General Counsel's Office, attached to First Amended Complaint. His appeal was returned for postage due, however, and was ultimately not received by the Regional Office until April 9, 2001. Id. As a consequence, the appeal was denied as untimely, both at the Regional Office, by letter dated April 16, 2001, and at the BOP Central Office, by let-

ter dated May 22, 2001. Rejection Notices dated April 16, 2001, and May 22, 2001, attached to First Amended Complaint.

As a result of these allegations, on April 24, 2001, the Plaintiff commenced this lawsuit, pursuant to Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971). Later, on June 25, 2001, he filed his First Amended Complaint, in which he is seeking compensatory damages in the amount of 6.1 million dollars, punitive damages in the amount of 5.9 million dollars, and injunctive relief.[1] Id. at 4-4(1). In turn, the Defendants have filed a Motion to Dismiss, or for Summary Judgment, claiming that the First Amended Complaint must be dismissed because the Plaintiff failed to exhaust his administrative remedies on all of his claims, and that he failed to state a claim for relief under either the Fifth or the Eighth Amendment. They further assert that, in any event, they are entitled to official immunity for their actions.

## III. Discussion

The Defendants argue that we are obligated to dismiss the Plaintiff's claims, under the exhaustion requirement contained in

[1]On January 30, 2002, United States Magistrate Judge E.S. Swearingen recommended that the Plaintiff's then pending Motion for a Temporary Restraining Order and/or Injunction be denied, as moot, because the Plaintiff had been transferred from FMC-Rochester. Docket No. 32. The District Court, the Honorable Michael J. Davis presiding, adopted the Report and Recommendation on February 21, 2002. Docket No. 36. Therefore, the only remaining remedy is the Plaintiff's request for monetary damages.

the Prison Litigation Reform Act, Title 42 U.S.C. §1997e(a) ("PLRA"). Specifically, they contend that, while the Plaintiff did file an administrative grievance regarding his transfer, which assertedly occurred without due process of law, he did not pursue his administrative remedies to completion on that particular issue. They further allege that the Plaintiff failed to seek administrative review for the alleged injury which purportedly arose from the Defendants' deliberate indifference to serious medical needs. As a result, the Defendants' urge that the Plaintiff's claims must be dismissed for failure to state a claim. We agree.

A. Standard of Review. In reviewing a Complaint under a Rule 12(b)(6) Motion, we must consider all of the facts alleged in the Complaint as true, and construe the pleadings in a light most favorable to the plaintiff. See, e.g., Brotherhood of Maintenance of Way Employees v. Burlington Northern Santa Fe Railroad, 270 F.3d 637, 6388 (8th Cir. 2001). In addition, in assessing a Rule 12(b)(6) Motion, a Court must liberally construe a pro se Complaint. See, Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994). "A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief." Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001), citing Breedlove v. Earthgrains

Baking, 140 F.3d 797, 799 (8th Cir. 1998); Helleloid v. Independent School Dist. No. 361, 149 F. Supp.2d 863, 866-67 (D. Minn. 2001).

"Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." Young v. City of St. Charles, supra at 627, citing Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). "To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions." Id., citing Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998).

B. Legal Analysis. In the context of a Bivens claim brought by a prisoner, a Motion to Dismiss must be granted when the prisoner has failed to exhaust his administrative remedies. The Supreme Court has explained that "the doctrine of exhaustion of administrative remedies is one among related doctrines * * * that govern the timing of federal-court decisionmaking," and that the "rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts," "is required because it serves the twin purposes of protecting the administrative agency authority and promoting judicial efficiency." McCarthy v. Madigan,

503 U.S. 140, 144 (1992).[2] Those purposes then, serve as the backdrop to our consideration of the exhaustion requirement that Congress included in the PLRA, by providing as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Title 42 U.S.C. §1997e(a).[3]

The Supreme Court has construed this provision broadly, and has held that the doctrine requires prisoners to exhaust all available administrative processes, where those processes have the authority to take some remedial action, even if they cannot take the specific

---

[2]In actuality, the specific holding in McCarthy v. Madigan, 503 U.S. 140 (1992), is inapplicable to our determination, as that holding has been overruled by the amendments to the PLRA, which were enacted in 1996, and which made exhaustion mandatory, rather than discretionary, as it had been when the Supreme Court decided that case. See, Booth v. Churner, 532 U.S. 731, 739-41 (2001); Chelette v. Harris, 229 F.3d 684, 687 (8th Cir. 2000). Nonetheless, the Supreme Court's comments, in McCarthy, which concern the general purposes served by exhaustion, have not lost their legitimacy and force, and they continue to guide the Court on the "long * * * acknowledged" purposes of the exhaustion requirement.

[3]Although the PLRA refers to a "prisoner" and, at the time he was confined at FMC-Rochester, the Plaintiff was apparently a pretrial detainee, the analysis remains the same. The PLRA specifically defines "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." Title 42 U.S.C. §1997e(h).

remedial action that is demanded by the prisoner. See, Booth v. Churner, 531 U.S. 956 (2001).

The facts of Booth are particularly applicable in this case. There, the Plaintiff was an inmate at a State Correctional Institution, and claimed that the defendant corrections officers violated his Eighth Amendment right to be free from cruel and unusual punishment. Id. at 734. Specifically, he alleged that they assaulted him, bruised his wrists by tightening and twisting handcuffs, threw cleaning material in his face, and denied him medical attention to treat the resultant injuries. Id. Although he initially sought injunctive relief as well as monetary damages, the Court assumed that the request for injunctive relief was mooted by the fact that, in the intervening time, the plaintiff had been transferred to another correctional facility. Id. at 735 n.2. Thus, the only remaining request for relief was for monetary damages, which were not available, at that time, in the applicable State. Id. at 734.

Prior to asserting his claims in Federal Court, the plaintiff in Booth did file an administrative grievance, "charging at least some of the acts of abuse he later alleged in his action." Id. at 734-35. He did not pursue the administrative process to completion, however. Id. at 735. He argued, though, that since his only remaining requested relief was monetary damages, and since the correctional facility could not provide that requested relief, there

were no "available" administrative remedies for him to exhaust. Id. at 736. The Supreme Court disagreed. It concluded that, while monetary damages might not be available to a plaintiff in such an instance, the PLRA requires exhaustion when there is a possibility of some relief. Id. at 736 n.4 (stating that "[w]ithout the possibility of some relief, the administrative officers would presumably have no authority to act on the subject of the complaint, leaving the inmate nothing to exhaust"). As the Court noted:

> [R]equiring exhaustion in these circumstances would satisfy at least some inmates who start out asking for nothing but money, since the very fact of being heard and prompting administrative change can mollify passions even when nothing ends up in the pocket. And one may suppose that the administrative process itself would filter out some frivolous claims and foster better-prepared litigation once a dispute did move to the courtroom, even absent formal factfinding.

Id. at 737; see also, Porter v. Nussle,--- U.S. ---, 122 S.Ct. 983, 988 (2002)("Beyond doubt, Congress enacted §1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case[,]" and "[i]n some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation[,]" while "[i]n other instances, the internal review might 'filter out some frivolous claims.'").

Thus, the question becomes whether the Plaintiff has properly exhausted his administrative remedies as to the claims he has raised

in his First Amended Complaint, irrespective of the fact that his sole remaining requested relief is for monetary damages.[4]

FMC-Rochester, like other Federal prisons, follows the sequential grievance system enunciated in 28 C.F.R. §§542.10 through 542.19. Under that framework, when a prisoner brings a complaint, he is first required to "present [the] issue of concern informally to staff," who "attempt to informally resolve the issue." 28 C.F.R. §542.13(a). If the inmate is not satisfied with that informal resolution, he may then file a Request for Administrative Remedy with the Warden. See, 28 C.F.R. §524.14(a). "The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form * * *, is 20 calendar days following the date on which the basis for the Request occurred." Id. To appeal a Warden's decision, an inmate must file an appeal with the Regional Director, "within 20 calendar days of the date the Warden signed the response." 28

---

[4]Although the Court in Booth v. Churner, 532 U.S. 731 (2001), was addressing the PLRA as applied to a State prisoner seeking relief under Title 42 U.S.C. §1983, the statute applies with equal force to Federal prisoners. See, e.g., Porter v. Nussle, --- U.S. ---, 122 S.Ct. 983, 988 (2002)("[F]ederal prisoners suing under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 * * * (1971), must first exhaust inmate grievance procedures just as State prisoners must exhaust administrative processes prior to instituting a §1983 suit."); Rick v. T.C. Peterson, 26 Fed. Appx. 588, 2001 WL 1345089 at *1 (8th Cir. November 2, 2001) [unpublished decision](applying Booth to a Bivens action).

C.F.R. §542.15(a). "An inmate who is not satisfied with the Regional Director's response may submit an Appeal" to the General or Central Office "within 30 calendar days of the date the Regional Director signed the response." Id. This is "the final administrative appeal." Id. Therefore, in order to have exhausted the administrative grievance procedure, an inmate must have followed the sequential process through to a determination by the General or Central Office.

We first note that, here, the Defendants contend that, even in regard to the Plaintiff's claim that he was transferred to a five-man dormitory cell without due process of law, as punishment for his "disability," and that he was harassed because of his limitations, he did not pursue his administrative remedies through all three steps of the administrative process, since his appeal to the Regional Office was untimely. Some Courts have alluded to the fact that an untimely appeal may constitute an abandonment of the administrative process prior to its completion. See, e.g., Wright v. Morris, 111 F.3d 414, 417 n.3 (6th Cir. 1997)("It is clear, however, that in the usual case in the future, where the alleged violations occurred after the PLRA's enactment, and inmates have both notice that exhaustion is required and a reasonable opportunity to file complaints, it would be contrary to Congress's intent in enacting the PLRA to allow inmates to bypass the exhaustion requirement by

declining to file administrative complaints and then claiming that administrative remedies are time-barred and thus not then available."); Hattie v. Hallock, 16 F. Supp.2d 834, 837 (N.D. Ohio 1998) ("[I]t is equally contrary to Congress's intent to allow inmates to bypass the exhaustion requirement by declining to file administrative *appeals*, and then claiming that administrative remedies are time-barred and unavailable"). As this is a Motion to Dismiss, however, we must take the Plaintiff's allegations as true, and he alleges, in a Letter dated May 5, 2001, which is attached to his First Amended Complaint, that, although the response to the first step of the grievance process was dated March 1, 2001, he did not receive it until March 23, 2001, and filed his appeal on March 27, 2001. The appeal was returned to the Plaintiff for postage due, but was received by the Regional Office on April 9, 2001, which would have been timely given the Plaintiff's assertion.

In some instances, if a prison prevents an inmate from exhausting his administrative remedies, then the Court may determine that the prisoner has satisfied the PLRA exhaustion requirement. See, Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001)("Thus, Foulk's testimony suggests that he had exhausted his available administrative remedies because, once MDOC failed to respond to his IRR, no further administrative proceedings were "available" to him."); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)("We be-

lieve that a remedy that prison officials prevent a prisoner from "utiliz[ing]" is not an "available" remedy under § 1997e(a)[.]"). Given the Plaintiff's allegation in this case, that he did not receive the Warden's response until after the time he should have responded, in accordance with 28 C.F.R. §542.15(a), we conclude that the Plaintiff has shown adequate evidence, at least to survive a Motion to Dismiss, that he did indeed exhaust his administrative remedies in regard to his transfer, and any harassment or discrimination by Duncan.

He did not do the same with respect to his complaint of deliberate indifference to his serious medical needs, however, or his various complaints against Stalka, Dr. Tran, Howell, and Castenada. While we certainly do not expect the Plaintiff's grievance to specifically delineate the facts and pertinent authorities which he later includes in his Complaint under a Bivens claim, he must, in any event, place the prison on notice about the substance of his claims, in order that the prison's administration may address those particular claims. Cf. Porter v. Nussle, supra at 988 (explaining that one purpose of the exhaustion requirement is to allow "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case").

Here, the Plaintiff did nothing to permit FMC-Rochester to address his claim that Duncan made him do work which violated his

medical restrictions, or that Duncan was deliberately indifferent to the Plaintiff's serious medical needs, which thereby caused a worsening of his condition, that ultimately resulted in surgery, or his assertions that the remaining Defendants abrogated their duty, in some fashion, by failing to protect the Plaintiff, and harassed or discriminated against him in other ways. Rather, the Plaintiff's grievance only addressed the fact that he was moved from a two-man cell to a dormitory cell, without due process of law, and that he was harassed and discriminated against by Duncan. As a consequence, he has not fulfilled his obligation to exhaust his administrative remedies prior to initiating a suit in Federal Court, and his Complaint must, therefore, be dismissed, without prejudice, however. Our conclusion remains the same even though the Plaintiff's sole remedy now is monetary damages, which FMC-Rochester cannot provide, as we conclude that the officials could have taken some actions had they known that Duncan, and the remaining officials, were failing to ensure that the Plaintiff's injuries were not exacerbated. See, e.g., Booth v. Churner, supra.

Moreover, even though the Plaintiff may have exhausted his administrative remedies on some of his claims, we must still recommend dismissal of the action as a whole. Our reading of the law on this point is guided by our Court of Appeals' decision in Graves v. Norris, 218 F.3d 884 (8th Cir. 2000). There, the plaintiffs ap-

pealed a District Court's dismissal of their claims for non-exhaustion, and argued that "the district court abused its discretion in dismissing the suit without prejudice because their prison grievances were in process when the suit was filed, and some grievances were administratively denied before the court ruled." Id. at 885. The Court of Appeals rejected that argument, however, and held that, "[w]hen multiple prison condition claims have been joined * * * the plain language of §1997e(a) requires that all available prison grievances must be exhausted as to all of the claims." Id. Therefore, finding that it was "apparent that at least some of the plaintiffs' many claims were not fully exhausted at the time the district court dismissed the action without prejudice," the Court determined that the District Court's dismissal had been proper. Id. Given this decision, and since we have concluded that the Plaintiff has not now exhausted **all** of his claims, under Graves, we must recommend dismissal of his First Amended Complaint. As such, we recommend that the Defendants' Motion to Dismiss be granted.

We close with one important and final observation. We recognize that the prior United States Magistrate Judge, who was assigned this case, recommended, on June 12, 2001, that the case be summarily dismissed because the Plaintiff had failed to exhaust his administrative remedies, see, Docket No. 14, and that the District

Court had rejected that recommendation on September 20, 2001, because the Plaintiff had filed his First Amended Complaint, "which alleges that Plaintiff has now exhausted his administrative remedies, and has submitted documentation to show such exhaustion[,]" see, Docket No. 20. The District Court's Order does not foreclose our recommendation, however, that the Plaintiff has not exhausted his administrative remedies, as the Magistrate Judge's recommendation, and the District Court's subsequent Order, involved a different posture of the case. According to the Magistrate Judge's Report and Recommendation, "Plaintiff Penn has recently acknowledged that Plaintiff['s] available administrative remedies had not been fully exhausted when this action was commenced, and, in fact, [his] claims for administrative relief are still pending." Docket No. 14, at 3. As a consequence, the Magistrate Judge recommended that the case be dismissed, without prejudice, for failure to exhaust. Id. at 6. Prior to the District Court's ruling on the Report and Recommendation, the Plaintiff had finished exhausting his administrative remedies, but only as they related to his transfer, and the alleged harassment and discrimination by Duncan. See, Docket No. 20. Neither the Magistrate Judge, nor the District Court, addressed whether the Plaintiff's asserted exhaustion of his administrative remedies covered all of his allegations, which is the basis for our Recommendation that the Defendants' Motion to

Dismiss be granted. Thus, our Recommendation does not contravene the District Court's previous ruling.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Defendants' Motion to Dismiss or for Summary Judgment [Docket No. 33] be GRANTED, and that the Plaintiff's First Amended Complaint be dismissed, without prejudice.

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than July 16, 2002,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than July 16, 2002,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.